JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Roderick Mallett ("Mallett"), appeals his conviction and sentence. Finding no merit to the appeal, we affirm.
 {¶ 2} In November 2006, Mallett was charged with the failure to comply with the order or signal of a police officer. The charge included a furthermore clause, which alleged that he caused a substantial risk of serious physical harm to persons or property. The matter proceeded to a jury trial, at which he was found guilty of the underlying charge and the furthermore clause. Mallett was sentenced to three years in prison to be served consecutively with his sentence in Case No. CR-492512.[1]
The following evidence was presented at trial.
 {¶ 3} In October 2006, Cleveland police officers Jeffrey Weaver ("Weaver") and Nathan Gobel ("Gobel") responded to a call for "shots fired" in the area of East 75th Street and Kinsman Avenue. When they arrived, they observed a white car driven by Mallett slowly leave the area heading northbound on East 75th
Street. They followed the car and attempted to effect a traffic stop for Mallett's cracked windshield. Weaver actuated the lights and sirens and Mallett's car rolled to a stop. As Weaver and Gobel exited the cruiser, however, Mallett sped off at a high rate of speed. The officers pursued Mallett, but their supervisor ordered them to stop their chase. Shortly after the pursuit was terminated, Weaver testified that he learned through radio communication that Mallett was seen driving on East 75th Street. *Page 4 
Weaver proceeded in that direction and saw Mallett driving on the grass through a park-like area in the Rainbow Terrace Apartment complex. Mallett left his car parked on the grass and ran inside an apartment building, where he was apprehended.
 {¶ 4} Mallett now appeals, raising five assignments of error. In the first assignment of error, he argues that he was denied his constitutional right to the effective assistance of counsel when defense counsel failed to protect his rights before and during trial. He claims counsel was deficient for failing to: object to improper conduct by the prosecutor, object to certain prejudicial witness testimony, and file a motion to suppress.
 Ineffective Assistance of Counsel {¶ 5} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.3d 373, at paragraph two of the syllabus; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674. To determine whether counsel was ineffective, Mallett must show that: (1) "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's "deficient performance prejudiced the defense" in that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."Strickland. *Page 5 
 {¶ 6} In Ohio, a properly licensed attorney is presumed competent.Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301, 209 N.E.2d 164. In evaluating whether a petitioner has been denied the effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976), 45 Ohio St.2d 71,341 N.E.2d 304, at paragraph four of the syllabus.
 {¶ 7} When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391,358 N.E.2d, 623; State v. Calhoun, 86 Ohio St.3d 279, 289,1999-Ohio-102, 714 N.E.2d 905. To show that a defendant has been prejudiced, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, at paragraph three of the syllabus; Strickland.
 {¶ 8} Mallett argues that his attorney failed to provide an adequate defense when he failed to file a motion to suppress to challenge Mallett's illegal traffic stop. He claims that the officers exceeded the scope of their authority because they lacked reasonable suspicion that he was committing a crime. However, Mallett fails to point to what evidence in the record resulted from the attempted traffic stop. Since Mallett failed to demonstrate how the outcome of his trial would have been *Page 6 
different had defense counsel filed a motion to suppress, he has not established that counsel's alleged errors deprived him of a fair trial.
 Prejudicial Testimony and the Right to a Fair Trial {¶ 9} Mallett also claims that his attorney failed to object to irrelevant and highly prejudicial portions of Weaver's testimony, which denied him due process and a fair trial. Mallett cites to Weaver's testimony that other police pursuits had resulted in fatalities and to Detective Beaman's testimony about Mallett's statement that he drove away from the police because he "had warrants." Mallett argues that his attorney failed to request any limiting instruction to mitigate the effects of the unfair evidence.
 {¶ 10} Generally, relevant evidence is admissible, unless its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.[2]
See Evid.R. 402 and 403.
 {¶ 11} In reviewing the record, we find that the testimony in question was not unfairly prejudicial. Therefore, we find that Mallett was not denied his right to a fair trial.
 Prosecutorial Misconduct {¶ 12} Mallett also argues that his attorney was ineffective for failing to object to the prosecutor's misconduct during closing argument. He claims that the *Page 7 
prosecutor went beyond the facts of the case and incited the jurors' emotions. The prosecutor's statements at issue are as follows:
 "I want you to think about if you were driving in traffic and you saw coming from the other direction a car driving at a high rate of speed and a police officer chasing behind with lights and sirens going, and as you're driving the car that's being chased veered over into your lane of traffic and was coming directly at your car, I want you to think about if you would feel like there was a risk of you being seriously harmed or your car being seriously harmed in that situation.
 I would submit to you that you would, that if you had kids in the back seat and after this car came by you and you swerved out of the way, and went past you, you stop and you turn around and you make sure your kids are okay * * *."
 {¶ 13} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the accused. State v. Smith (1984),14 Ohio St.3d 13, 470 N.E.2d 883. A new trial will be ordered where the outcome of the trial would clearly have been different but for the alleged misconduct.State v. Brewer (June 22, 1995), Cuyahoga App. No. 67782. When applying this test, we consider "the effect the misconduct had on the jury in the context of the entire trial." State v. Keenan (1993), 66 Ohio St.3d 402,410, 613 N.E.2d 203. In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury still would have found the appellant guilty. State v. Maurer (1984), 15 Ohio St.3d 239, 266,473 N.E.2d 768. *Page 8 
 {¶ 14} Generally, the prosecution is given a great deal of latitude during closing argument. See State v. Bies, 74 Ohio St.3d 320, 326,1996-Ohio-276, 658 N.E.2d 754. In State v. Smith, 80 Ohio St.3d 89, 111,1997-Ohio-355, 684 N.E.2d 668, the Ohio Supreme Court stated, "prosecutors are entitled to latitude as to what the evidence has shown and what inferences can reasonably be drawn from the evidence." (Citations omitted).
 {¶ 15} The wide latitude given the prosecution during closing arguments, however, does not `"encompass inviting the jury to reach its decision on matters outside the evidence adduced at trial.' (A prosecutor must avoid Insinuations and assertions which are calculated to mislead the jury'.)." State v. Hart, Cuyahoga App. No. 79564, 2002-Ohio-1084. (Internal citations omitted). Thus, it is improper for a prosecutor to incite the jurors' emotions. Id.
 {¶ 16} Here, the prosecutor's act of inciting the jurors' emotions by asking them how they would feel if a car, fleeing the police, drove toward them as they drove with their children, was improper. We cannot conclude, however, that these remarks during closing argument substantially prejudiced Mallett's right to a fair trial. The record demonstrates that Mallett sped off at a high rate of speed, nearly causing an accident with an RTA bus, and drove through the grass of a park-like area where children were playing.
 {¶ 17} We cannot say that, absent the remarks of the prosecutor, the jury verdict would have been different in light of the evidence presented at trial. *Page 9 
Accordingly, we find that the prosecutor's statements did not deny Mallett his right to a fair trial.
 {¶ 18} Since Mallett failed to show how counsel's "failures" affected the outcome of his trial, it cannot be said that he received ineffective assistance of counsel. Therefore, the first assignment of error is overruled.
 {¶ 19} In the second assignment of error, Mallett argues he was denied his constitutional right to due process and a fair trial when irrelevant and unfairly prejudicial testimony was introduced against him. In the third assignment of error, Mallett argues he was denied his constitutional right to a fair trial because of prosecutorial misconduct. We have discussed these arguments above and therefore decline to address them again. Accordingly, the second and third assignments of error are overruled.
 Furthermore Clause {¶ 20} In the fourth assignment of error, Mallett argues that his conviction of the furthermore clause was not supported by sufficient evidence and was against the manifest weight of the evidence.
 {¶ 21} The standard of review for the sufficiency of evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus, which states:
 "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Page 10 
See also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23,514 N.E.2d 394; State v. Davis (1988), 49 Ohio App.3d 109, 113, 550 N.E.2d 966.
 {¶ 22} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541 and State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. Thompkins at 390. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks at paragraph two of the syllabus.
 {¶ 23} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." Thompkins. As the Ohio Supreme Court declared:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the *Page 11 
issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 24} In State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, we stated that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow (1995), 103 Ohio App.3d 368,370-371, 659 N.E.2d 814.
 {¶ 25} Mallett argues that the State did not establish that he was traveling at a particular speed and did not describe any particular violations other than crossing the center line. We disagree. *Page 12 
 {¶ 26} Mallett was charged with the failure to comply with the order or signal of a police officer, which provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C. 2921.331.
 {¶ 27} If the jury finds that Mallett "caused a substantial risk of serious physical harm to persons or property," the offense shall constitute a third degree felony. R.C. 2921.331(B)(5)(ii). A substantial risk is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).
 {¶ 28} In the instant case, the evidence established that Mallett sped off at a high rate of speed and caused an RTA bus to slam on its brakes to avoid hitting him. The record also demonstrates that Mallett was weaving in and out of traffic. In addition, Mallett drove his vehicle through a grassy area containing playground equipment and sidewalks. The record reveals that children were playing in the park at the top and bottom of the grassy area where Mallett drove his vehicle. Therefore, in viewing the evidence in the light most favorable to the State, we find that there was sufficient evidence to support finding that Mallett caused a substantial risk of serious physical harm to persons or property. We also find that his conviction was not against the manifest weight of the evidence.
 {¶ 29} Therefore, the fourth assignment of error is overruled. *Page 13 
 Postrelease Control {¶ 30} In the fifth assignment of error, Mallett argues that the trial court's failure to notify him of the duration and terms of his postrelease control prejudiced him and entitled him to a new sentencing hearing.
 {¶ 31} At the sentencing hearing, Mallett was sentenced in three separate cases.[3] He was sentenced to one year in prison in Case No. CR-494256, and to a total of six years in prison in Case No. CR-492512. He was then sentenced to three years in prison in the instant case. The trial court sentenced him to an aggregate of nine years in prison. After sentencing him in Case Nos. CR-494256 and 492512, the trial court informed Mallett that:
 "You have mandatory five years post-release control that applied to that sentence. So once you are out, you will be on five years post-release control.
 And if you violate that, the Adult Parole Authority can take you back for up to one-half of this sentence without a trial; and they can charge you with a new case; and they can do both things at the same time * * *."
 {¶ 32} R.C. 2967.28 requires the imposition of a mandatory three-year period of postrelease control for Mallett's failure to comply conviction and five years of postrelease control for the drug convictions.[4]
Because Mallett was sentenced for the *Page 14 
three cases at the same time, he will only serve one term of postrelease control. Thus, the three-year period for the failure to comply charge is subsumed by the five-year period for the drug charges, and Mallett is subject to a total of five years of postrelease control when he is released from prison, as the court stated. Therefore, we find the trial court adequately notified Mallett of the term of postrelease control he would receive. Accordingly, the fifth assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. JAMES J. SWEENEY, A.J., and MELODY J. STEWART, J., CONCUR.
[1] Mallett was sentenced in three separate cases at his sentencing hearing.
[2] Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.
[3] After Mallett was convicted in the instant case, he pled guilty to drug trafficking and possession (second degree felonies) in Case No. CR-492512.
[4] In State v. Bezak, 114 Ohio St.3d 94, 2007-Ohio-3250,868 N.E.2d 961, the Ohio Supreme Court determined that "when a defendant is convicted of or pleads guilty to one or more offenses and postrelease control is not properly included in a sentence for a particular offense, the sentence for that offense is void." Thus, the offender is entitled to a new sentencing hearing for that particular offense. Id. *Page 1